**BAKER'S ADM'R v. FREDERICK et al.**

Court of Appeals of Kentucky.

Nov. 21, 1951.

The Fredericks denied the charge of negligence and alleged contributory negligence of the deceased as the cause of her death.. The jury found for the Fredericks and the administrator has appealed from the judgment on that verdict.

The appellant contends that the judgment should be reversed on the grounds that (1) the verdict is palpably and flagrantly against the evidence and is unsupported by the physical facts; and (2) the trial court erred in refusing to grant a new trial because of surprise.

The appellees' truck was traveling west on State Highway 85, approximately one mile from the city limits of Providence. At this point the road is straight and level. The late afternoon sun was shining brightly at such an angle as to impair the vision of anyone driving in a westerly direction.

The appellant presented the following evidence in support of his case. Shortly before the accident, two witnesses had seen the deceased at a point 200 or more feet from the spot where she was hit. She was then walking east, facing traffic, in a path between the paved portion of the road and the ditch. Four witnesses heard something being struck and then the screeching of brakes. Other witnesses saw the truck zigzagging on the road, trying to stop and finally doing so 240 feet from the point of impact. None of the above-mentioned witnesses actually saw the accident take place. The speed of the truck was estimated at from 45 to 50 miles per hour, or "pretty fast." Two eyewitnesses said the truck dropped off the highway and struck a colored woman walking in a little path. These witnesses were 150 or 200 yards from the scene in an automobile traveling east, or toward the truck. However, they did not stop and therefore did not know who was in the truck or who had been hit. One of them said the truck came back on the road two or three times before it could be stopped. Several hours after the accident, marks were found on the shoulder of the road for some 200 feet above the point of impact. These marks came back on the road and then off again at a point 15 or 20 feet above where the accident occurred, and continued on for another 80 steps "back—

Vert C. Fraser, Providence, for appellant.

Withers, Lisman & Withers, C. H. Lisman and Thomas L. Withers, all of Dixon, for appellees.

CAMMACK, Chief Justice.

At approximately 5:00 p. m. on February 16, 1950, a 72 year old pedestrian, Martha Baker, was struck and fatally injured by a truck operated by Willie Wayne Frederick. This truck was owned by and used in the business of Will Frederick, the father and employer of Willie Wayne Frederick. Garth Mays, administrator of the deceased's estate, brought this action against the Fredericks to recover damages to the estate.

wards and forwards across the road." The witnesses who saw and measured these marks could not say by whom they had been made.

The evidence for the appellees consisted of the testimony of three witnesses. Willie Wayne Frederick, the driver of the truck, estimated his speed at 30 miles per hour. He said he was looking straight ahead; that both the road and the shoulder in front of him were clear of vehicles and pedestrians; that he at no time saw the deceased until after the accident; that the first knowledge he had of striking something was when he heard a thump against the right door of the truck; that he traveled not more than 40 feet past the point of impact; that his truck never left the traveled portion of the highway, being at all times 18 inches from the center line; that he had perfect control of the truck after the accident, but might have zigzagged slightly; and that Oral DeVoss was the first person to reach the scene.

Another witness went to the scene just after the body had been removed. He said he saw black marks on the road extending 30 or 40 feet from the place where the woman had been struck, but did not know by whom these marks had been made.

The only eyewitness, other than the two presented by the appellant, was Oral DeVoss, who testified that he was driving behind the Fredericks' truck and that, when 426 feet from the point of the accident, he saw a woman, with head down and in a stooped position, walk, as though crossing the road, "at a pretty good pace" out of a lane 5 or 6 feet from the truck directly into the side of its right front fender. The truck then traveled 50 feet after the impact. He said he stopped at the scene, but immediately drove on, at the driver's request, to obtain assistance.

A considerable amount of testimony was introduced by both parties in attempts to prove that the eyewitnesses were or were not at the scene of the accident.

The appellant, stressing the importance of the physical facts and their bearing on the correctness of the verdict, relies on the principle applied in many cases, which, stated simply, is that, where the physical facts point so unerringly to the actual cause of the accident as to leave no room for a contrary determination, a verdict embodying such determination should be set aside as unsupported by the evidence. C. L. & L. Motor Express Co. v. Achenbach, 259 Ky. 228, 82 S.W.2d 335; Louisville & N. R. Co. v. Welsh, 272 Ky. 120, 113 S.W.2d 879; and Silver Fleet Motor Express v. Wilson, 291 Ky. 509, 165 S.W.2d 48.

The physical facts upon which the appellant bases his argument are: (1) the marks on the road and its shoulder; (2) the force with which deceased was struck, as shown by her multiple injuries and the distance she was thrown by the impact; and (3) the parts of her body on which the injuries were found, when considered with the damage done to the truck.

In support of his contention that the road marks show conclusively that the truck left the road and struck the deceased, the appellant relies primarily on the cases of C. L. & L. Motor Express Co. v. Achenbach and Silver Fleet Motor Express v. Wilson, cited above. These cases may be distinguished readily from the case at bar, inasmuch as the location and length of the road marks in the cases cited were clearly established (in the Wilson case by photographs) and were traced to the vehicles involved in the collisions. In the case before us the evidence does not establish clearly the location of the marks. The appellant's witnesses placed them on the shoulder of the road above, at and beyond the point of impact; whereas the appellees' witness placed them entirely on the paved portion of the road and all within 50 feet beyond the point of impact. Furthermore, it was not proven by either party that the marks found were made by the Fredericks' truck. Thus it may be seen that the road marks were not of themselves sufficient to overcome the sworn testimony of the appellees' witnesses.

The deceased sustained the following injuries; fractured right hand, fractured right arm at and above the wrist and above the elbow, fracture of the right leg below the knee and possibly above it, a severe

head wound from her nose to the top of her scalp, fractured skull, bruises around her bladder and bruises on the front of the right leg between the knee and ankle. She was knocked out of one shoe and one overshoe and found lying in a driveway 7 or 8 feet from the paved portion of the road. The appellant contends that the injuries would not have been so severe, nor the body thrown so far, had the truck been traveling on the paved portion of the road and at a speed of 30 miles per hour, as stated by the appellees' witnesses. There is no proof in the record to support either of these contentions. We can not indulge in such assumptions, in view of the freakish effects that often result from accidents of this nature.

The appellant points out that all the injuries sustained by the deceased were to the right side of her body and the front of her head, and contends that, had she been crossing the road in front of the truck, her left side would have been exposed to the truck, and, consequently, at least a part of the injuries would have been on the left side of her body. He also points out that the truck, admittedly in perfect condition prior to the accident, afterwards had a dent in the point of the right front fender and another near the window of the right door. He insists that this proves the truck left the road and struck the right leg of the deceased with the wooden front bumper as she walked toward the truck, thereby causing the fractures of, and bruises on, the leg; that deceased was then thrown onto the fender, where her right arm struck the fender, resulting in the fractures of the arm and the dent in the fender; that this caused her to be thrown into the air, her head striking the door of the truck, causing the head injuries and the dent in the door, from where she fell to the ground. There is no direct testimony that the accident happened in this manner. The doctor who examined the body and listed the injuries said the wooden bumper might have caused the bruises on the front of the right leg. Only one witness, DeVoss, mentioned which part of the car first struck the deceased. He said it was the side of the right front fender. The appellant's version of the accident, as set out above, being conjectural at best, even when bolstered by the testimony of his own disinterested eyewitnesses that the truck was off the road when deceased was hit, does not sufficiently establish the type of physical facts which are necessary to overcome the sworn testimony of a disinterested eyewitness that the deceased walked onto the road and into the side of the truck's fender.

Both parties rely rather strongly on the case of Smith v. Dunning, 275 Ky. 733, 122 S.W.2d 781, 784, where the facts and the contentions on appeal are very similar to those in the case now before us. In that case we said: "While conceding that the general rule as to the evidential force of physical facts in such case is substantially as quoted supra, we are yet of the opinion that this rule invoked is here inapplicable for the reason that even conceding arguendo the verity of certain of the physical facts here presented and relied on by plaintiff, they are yet as consistent with the defendant's theory, as with that of plaintiff, as to the place and manner of the happening of the collision; or, in other words, the defendant's car could have struck the plaintiff in the same way and inflicted the same injuries whether it struck her when swerving into her, as she stood by the side of the road, or ran into her when she was out in the road, attempting to cross it."

This statement is applicable to the present case. The determination of questions of fact and the credibility to be given the witnesses' testimony are properly within the province of the jury. We are not authorized to reverse a judgment on this ground where there is a mere preponderance of the evidence in favor of the appellant, nor where more witnesses testify for the appellant than for the appellee. It is only where the verdict is palpably and flagrantly against the evidence that we will reverse the judgment and order a directed verdict for the opposing side, if the evidence be the same on another trial. Here, where the testimony of the disinterested eyewitnesses is highly contradictory, and the physical facts are consistent with either party's theory of the case, we would not be justified in so doing.

The second ground urged for reversal is that the trial court erred in refusing to grant the appellant a new trial on the ground of surprise, caused when Oral DeVoss, the appellees' eyewitness, allegedly changed his testimony materially from that which he gave at the coroner's inquest, thereby catching the appellant's attorney unprepared to rebut properly the new testimony. The appellant failed to move for a continuance or postponement at the time DeVoss testified and did not mention the alleged surprise until he filed his motion for a new trial. Affidavits were filed in the trial court in support of and against this ground. The statements contained in the affidavits filed by the appellant would, if heard by the jury, undoubtedly have weakened DeVoss' testimony. However, this is not the character of surprise contemplated as a ground for a new trial under the provisions of subsection (3) of Section 340 of the Civil Code of Practice. As was said in Caldwell v. E. F. Spears & Sons, 186 Ky. 64, 216 S.W. 83, 85, " * * * a litigant cannot be said to be surprised when his antagonist offers testimony to establish facts supporting his contention in the case. The surprise contemplated by the Code is such as is not reasonably to be anticipated, or perhaps testimony contrary to a prior understanding between the parties, or something resulting from actual fraud or deception. * * * " Furthermore, the appellant did not protect himself by requesting of the court at the time the testimony was given a continuance or time in which to procure the presence of his impeaching witnesses who purportedly were not at the trial. "The party may not speculate on the probability of a verdict, and then, if same prove unfavorable, claim the right to a new trial." Howard v. Strawbridge & Clothier, 165 Ky. 88, 176 S.W. 977, 980; Caldwell v. E. F. Spears & Sons, supra; Hall v. Commonwealth, 189 Ky. 72, 224 S.W. 492; Roark v. Commonwealth, 221 Ky. 253, 298 S.W. 683. Under these circumstances, the trial court did not err in refusing to grant a new trial on this ground.

Judgment affirmed.